IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| JAMES R. WATSON and<br>CAROLYN WATSON, | ) <br> ) <br> ) |  |
| Plaintiffs, | ) <br> ) |  |
| v. | ) <br> ) | Civ. No. 04-1298-SLR |
| OCEANEERING<br>INTERNATIONAL, INC., | ) <br> ) <br> ) |  |
| Defendant. | ) |  |

Peter E. Hess, Esquire, Wilmington, Delaware.  Counsel for Plaintiffs.

William J. Cattie, III, Esquire, and Carl D. Buchholz, III, Esquire, and Michael C. Gallagher, Esquire, Philadelphia, Pennsylvania.  Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: September 26, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On September 24, 2004, plaintiffs James R. Watson and his wife, Carolyn Watson, filed this suit against defendant Oceaneering International, Inc. ("Oceaneering") pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law. (D.I. 1) The Watsons seek maintenance and cure, damages resulting from Oceaneering's Jones Act negligence, damages resulting from the vessel's unseaworthiness, and damages due to loss of consortium. (D.I. 1)  Pending before this court is Oceaneering's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (D.I. 15)

## II. BACKGROUND

Plaintiff James R. Watson ("Watson") is a domicile of the State of Utah.  (D.I. 1 at ¶ 3)  Defendant Oceaneering is a Delaware corporation with its principal place of business in Texas.  (D.I. 1 at ¶ 4)  Watson is a merchant seaman who has worked for Oceaneering as Second Mate of the vessel PERFORMER for twelve years.  (D.I. at ¶ 5)  Watson alleges the vessel PERFORMER is owned by Oceaneering.  (D.I. 1 at ¶ 7)  On or about September 26, 2001, while at sea in the western Mediterranean, Watson experienced severe epigastric pain.  (D.I. 1 ¶ 8)  Symptoms included hematemesis (vomitting blood) and melena (bloody stools).  (Id.)  The severity of the symptoms confined Watson to his quarters without being able to eat; within two days he was unable to walk.  (Id.)  No intraveneous nourishment was provided.

(Id.) Watson was "finally" evacuated by helicopter to a hospital in Majorca, Spain. (D.I. 1 at ¶ 9) When arriving at the hospital, Watson was near death and suffered from pneumonia and severe dehydration. (Id.) Watson remained at the hospital in intensive care for nearly two weeks. The underlying condition was diagnosed as a pseudocyst of Watson's pancreas. (Id.) On October 14, 2001, Watson was flown to St. Luke's Hospital in Houston, Texas where he remained in intensive care for almost another full month. (D.I. 1 at ¶ 10) When Watson returned with his wife to Utah, his condition worsened and he was again hospitalized. (D.I. 1 at ¶ 11) After being discharged from the hospital with a stomach drainage tube and external bag, Watson grew weaker and was re-hospitalized about one month later. (Id.) It was discovered that Watson's stomach-draining tube had punctured his colon and he was diagnosed with perforated stomach lining. (D.I. 1 at ¶ 12) Watson's treating physician concluded that all of his medical complications were a direct and proximate result of his original shipboard illness and Oceaneering's failure to promptly and properly respond to the medical emergency. (D.I. 1 at ¶ 13)

Watson asserts that Oceaneering owes him maintenance and cure and that Oceaneering has failed to honor its obligation to pay. (D.I. 1 at ¶ 15, 18) Watson asserts damages due to Oceaneering's Jones Act negligence in failing to promptly and

properly respond to Watson's life-threatening medical emergency. (D.I. 1 at ¶ 20)  Watson also asserts the vessel PERFORMER's unseaworthiness by not having trained medical personnel onboard and not having crew promptly and properly respond to Watson's emergency.  (D.I. 1 at ¶ 22)  Carolyn Watson asserts recovery for loss of consortium.  (D.I. 1 at ¶ 26)

Oceaneering, in its motion for summary judgment, states that the owner of the vessel PERFORMER was Ocean Systems Engineering, Inc., which is not a named defendant in the case.  (D.I. 16 at 1) Oceaneering asserts that Watson's claim for the unseaworthiness of the vessel PERFORMER must be dismissed because such a claim can only be brought against an owner of a vessel.  (D.I. 16 at 4) In addition, Oceaneering asserts that Watson's failure to make available an expert witness who will testify as to the standard of care required for negligence requires dismissal of the Jones Act negligence claim.  (D.I. 16 at ¶ 7)  Finally, Oceaneering asserts that plaintiff Carolyn Watson's claim for loss of consortium is not available to a spouse of an injured seaman under the Jones Act, or under general maritime law.  (D.I. 16 at 7)

III. **STANDARD OF REVIEW**

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its

case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

It is well established that a vessel and its owner are liable to a seaman on the vessel for the seaworthiness of the vessel and for maintenance and cure for injuries sustained while on the vessel. Calhoun v. Yamaha Motor Corp., U.S.A., 40 F.3d 622, 631 (3d Cir. 1994); Matutue v. Lloyd Bermuda Lines, 931 F.2d 231, 235 (3d Cir. 1991). In addition, a seaman may sue his employer for injuries sustained in the scope of employment resulting from an employer's negligence. See Neely v. Club Med Management Servs., 63 F.3d 166, 194 (3d Cir. 1995) ("The Jones Act, however, provides a right of compensation for injuries negligently caused by the seaman's employer."). Most admirality suits involve an employee suit against the employer who is also the owner of the ship. However, when the owner of the vessel and the employer are separate entities, only the owner of the vessel is liable for unseaworthiness and maintenance and cure and only the employer is liable for Jones Act negligence. See Neely, 63 F.3d at 194 (considering a claim under the Jones Act to be against plaintiff's employers and a claim for unseaworthiness to be against the vessel owners).

**A. Unseaworthiness**

"The doctrine of unseaworthiness basically imposes on a shipowner a nondelegable duty to provide seamen a vessel that is reasonably fit for its purpose . . .." Calhoun, 40 F.3d at 631. Shipowners may not delegate their duty to provide a seaworthy ship. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94 n.11 (1946); see also Rodriguez v. McAllister Bros., Inc., 736 F.2d 813, 815 (1st Cir. 1984) ("Under settled principles of admiralty law, liability for unseaworthiness . . . turns upon who possessed control of the ship such that it could best be charged as the owner at the time the accident occurred."). However, in Reed v. The Yaka, 373 U.S. 410, 412-13 (1963), the Court held that a bareboat charterer, being in "full possession and control" of a vessel, may be treated as an owner, "generally called owner *pro hac vice*," and may be personally liable for the unseaworthiness of a chartered vessel. Id.; see Simko v. C & C Marine Maintenance Co., 484 F. Supp. 401, 403 (W. D. Pa. 1980) (holding employer can only be held liable for unseaworthiness if employer was found to be the owner *pro hac vice* of the vessel).

Watson only asserts that the PERFORMER was "defendant's vessel." Watson has not alleged that Oceaneering is an owner *pro hac vice* of the vessel PERFORMER. Oceaneering, in its motion for summary judgment, states the PERFORMER is not owned by Oceaneering, but rather by a third party not named in the suit. If Oceaneering is neither the owner of the vessel PERFORMER nor

6

the owner *pro hac vice*, it is not liable for the vessel's unseaworthiness. See Rao v. Hillman Barge & Constr. Co., 467 F.2d 1276, 1277 (3d cir. 1972) ("Appellee was not the owner of the barge, and, therefore, cannot be held liable for its alleged unseaworthiness."). Watson has come forward with no facts showing there is a material issue of fact regarding the ownership of the vessel PERFORMER.[1] See Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."). Therefore, Oceaneering is entitled to summary judgment on the issue of liability for unseaworthiness.

Following the same principles, Oceaneering is not liable for Watson's maintenance and cure.[2] See Cox v. Dravo Corp., 517 F.2d 620, 624 (3d Cir. 1975) (citing The Osceola, 189 U.S. 158, 175 (1903)) ("The vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued. . . ."). Because Watson has

---

[1] Plaintiff did not file a response to defendant's motion for summary judgment.

[2] Defendant does not expressly address the count for maintenance and cure, but requests that the entire complaint be dismissed. (D.I. 15 at ¶ 15)

7

alleged no facts to put the ownership of the vessel in dispute, Oceaneering's motion for summary judgment is granted for all the general maritime claims.

### B. Jones Act Negligence

The Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury." 46 U.S.C. App. § 688(a). Though a plaintiff alleging claims under the Jones Act must prove the traditional elements of negligence (duty, breach, notice, causation and damages), the standard of proof for causation under the Jones Acts is sometimes termed "featherweight." Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 210 (3d Cir. 1993). Oceaneering asserts that the standard of care an employer owes to its seaman employee with respect to medical care and medical personnel is not an issue that can be determined by an inexperienced layman, but rather must be addressed through expert testimony.

Under the Jones Act, a seaman can maintain a cause of action where "an employer's failure to exercise reasonable care causes a subsequent injury even where the employer's negligence did not render the ship unseaworthy." Ferrara v. A&V Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996). Recently, the Third Circuit has described the duty as "measured by what a reasonably prudent person would anticipate or foresee resulting from particular

circumstances." <u>Wilburn v. Maritrans GP Inc.</u>, 139 F.3d 350, 357 (3d Cir. 1998).

It is well settled that expert testimony in unnecessary in cases where jurors "are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." <u>Salem v. United States Lines Co.</u>, 370 U.S. 31, 35 (1962). Oceaneering argues <u>Wills v. Amerada Hess Corp.</u>, 379 F.3d 32 (2d Cir. 2004), mandates that an expert witness testify regarding the duty imposed on a maritime employer, the breach of which would make Oceaneeering liable for negligence. However, Oceaneering misstates the holding of the case. <u>Wills</u> stands for the proposition that "expert testimony on the issue of causation is necessary in Jones Act cases where a lay juror could not be expected to intuit the causal relationship between the acts in question and the injury." <u>Id.</u> at 41; <u>see also</u> <u>Wilburn</u>, 139 F.3d at 357 (stating the issue as whether "persons of common understanding could comprehend the primary facts offered by Wilburn to demonstrate the cause of his injuries"). The court in <u>Wills</u> states that when an injury has "multiple potential etiologies, expert testimony is necessary to establish causation." <u>Id.</u> at 46.

The flaw in Oceaneering's argument is that Oceaneering is requiring expert testimony to define the duty owed to Watson.

The duty in a Jones Act negligence claim is clear. A seaman may maintain an action where "an employer's failure to exercise reasonable care causes a subsequent injury." Ferrara, 99 F.3d at 453. Futhermore, Watson is not asserting negligence based on the lack of medical personnel or medical care of the vessel; Watson asserts negligence by Oceaneering's "failing to promptly and properly respond to Watson's life-threatening medical emergency." Oceaneering's negligent act could be the delay in airlifting Watson to a hospital.[3] This, however, is a question for the jury. Southard v. Independent Towing Comp., 453 F.2d 1115, 1118 (3d Cir. 1971) ("Issues of negligence in a Jones Act suit 'are questions of the jury to determine', and the jury 'plays a preeminent role' in Jones Act cases.") (internal citations omitted).

**C. Loss of Consortium**

Oceaneering is granted summary judgment on the claims for loss of consortium. The Supreme Court has stated that the Jones Act is limited to only pecuniary loss and, therefore, loss of society is not recoverable in a wrongful death action. Miles v.

---

[3] Oceaneering argues that the one expert Watson has produced, Dr. Manyak, "merely opines that defendant's delay in evacuating plaintiff from the vessel caused and/or exacerbated plaintiff's injuries." (D.I. 15 at ¶ 14) However, in this case, Dr. Manyak is exactly the type of expert witness Watson needs. Dr. Manyak can testify as to the causation element. Dr. Manyak concludes that the delay in removing Watson either caused or exacerbated Watson's injuries.

10

Apex Marine Corp., 498 U.S. 19, 32-33 (1990). This court follows the many other courts in extending Miles to apply to personal injury cases as well. Lollie v. Brown Marine Service, Inc., 995 F.2d 1565, 1565 (11th Cir. 1993) (holding the Jones Act does not authorize recovery for loss of society or consortium for personal injury); Smith v. Trinidad Corp., 992 F.2d 996, 996 (9th Cir. 1993) (holding wives of injured mariners cannot recover loss of society or consortium under the Jones Act); Murray v. Anthony J. Bertucci Construction Co., Inc., 958 F.2d 127 (5th Cir. 1992) ("[T]he Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes any recovery for nonpecuniary losses, such as loss of society"); Horsley v. Mobil Oil Corp., 15 F.3d 200, 202 (1st Cir. 1994) (holding that Miles precludes damages for loss of society under the Jones Act). Because the court has concluded that Watson's general maritime claims should be dismissed, it will not examine whether loss of consortium is recoverable under the general maritime law.[4]

---

[4] However, the court notes that most Circuits have followed the reasoning in Miles and concluded that loss of consortium is not recoverable under either Jones Act or general maritime law. The Supreme Court, in Miles, held that because there is no loss of society in a Jones Act wrongful death action, there can be no recovery for loss of society in a general maritime action, such as unseaworthiness, for the wrongful death of a Jones Act seaman. Miles, 498 U.S. at 32. The Court reasoned that to hold otherwise would be for the Court "to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." Id. at 32-33. Many Circuits have expanded this holding to causes of action for personal injury. See Lollie, 995

**V. CONCLUSION**

For the reasons stated herein, Oceaneerings's motion for summary judgment is granted in part and denied in part. Oceaneering is granted summary judgment on the general maritime claims of maintenance and cure and unseaworthiness of the vessel. Oceaneering is denied summary judgment on the claim of Jones Act negligence. Oceaneering is granted summary judgment on the claim for loss of consortium. An appropriate order shall issue.

---

F.2d at 1565 ("[W]e hold that neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases."); Smith, 992 F.2d at 996 (agreeing that wives of injured mariners cannot recover for loss of society and loss of consortium in their own actions filed under the Jones Act or under general admiralty law); Murray, 958 F.2d at 131 (concluding wife of injured seaman cannot recover under general maritime law for loss of society); Horsley, 15 F.3d at 203 ("Under the analysis prescribed in Miles v. Apex Marine Corp., 498 U.S. 19 (1990), an admiralty court may not extend the remedies available in an unseaworthiness action under the general maritime law to include punitive damages or damages for loss of parental or spousal society.").

12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES R. WATSON and<br>CAROLYN WATSON,<br><br>      Plaintiffs,<br><br>  v.<br><br>OCEANEERING<br>INTERNATIONAL<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 04-1298-SLR<br>)<br>)<br>)<br>)<br>) |

O R D E R

At Wilmington this 26th day of September, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion for summary judgment (D.I. 15) is granted in part and denied in part.

2. Defendant's motion for summary judgment on the general maritime claims for maintenance and cure and unseaworthiness is granted.

3. Defendant's motion for summary judgment on the Jones Act negligence claim is denied.

4. Defendant's motion for summary judgment on the loss of consortium claim is granted.

                                                /s/ Sue L. Robinson
                                                United States District Judge