IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES R. WATSON and            )
CAROLYN WATSON,                )
                               )
          Plaintiffs,          )
                               )
     v.                        )   Civ. No. 04-1298-SLR
                               )
OCEANEERING                    )
INTERNATIONAL, INC.,           )
                               )
          Defendant.           )

_____

Peter E. Hess, Esquire, Wilmington, Delaware.  Counsel for
Plaintiffs.

William J. Cattie, III, Esquire, and Carl D. Buchholz, III,
Esquire, and Michael C. Gallagher, Esquire, Philadelphia,
Pennsylvania.  Counsel for Defendant.

_____

**MEMORANDUM OPINION**

Dated: September 26, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

On September 24, 2004, plaintiffs James R. Watson and his
wife, Carolyn Watson, filed this suit against defendant
Oceaneering International, Inc. ("Oceaneering") pursuant to the
Jones Act, 46 U.S.C. § 688, and general maritime law.  (D.I. 1)
The Watsons seek maintenance and cure, damages resulting from
Oceaneering's Jones Act negligence, damages resulting from the
vessel's unseaworthiness, and damages due to loss of consortium.
(D.I. 1)   Pending before this court is Oceaneering's motion for
summary judgment pursuant to Fed. R. Civ. P. 56.   (D.I. 15)

## II. BACKGROUND

Plaintiff James R. Watson ("Watson") is a domicile of the
State of Utah.   (D.I. 1 at ¶ 3)   Defendant Oceaneering is a
Delaware corporation with its principal place of business in
Texas.   (D.I. 1 at ¶ 4)   Watson is a merchant seaman who has
worked for Oceaneering as Second Mate of the vessel PERFORMER for
twelve years.   (D.I. at ¶ 5)   Watson alleges the vessel PERFORMER
is owned by Oceaneering.   (D.I. 1 at ¶ 7)   On or about September
26, 2001, while at sea in the western Mediterranean, Watson
experienced severe epigastric pain.   (D.I. 1 ¶ 8)   Symptoms
included hematemesis (vomitting blood) and melena (bloody
stools).   (Id.)   The severity of the symptoms confined Watson to
his quarters without being able to eat; within two days he was
unable to walk.  (Id.)  No intraveneous nourishment was provided.

(Id.)  Watson was "finally" evacuated by helicopter to a hospital in Majorca, Spain.  (D.I. 1 at ¶ 9)  When arriving at the hospital, Watson was near death and suffered from pneumonia and severe dehydration.  (Id.)  Watson remained at the hospital in intensive care for nearly two weeks.  The underlying condition was diagnosed as a pseudocyst of Watson's pancreas.  (Id.)  On October 14, 2001, Watson was flown to St. Luke's Hospital in Houston, Texas where he remained in intensive care for almost another full month.  (D.I. 1 at ¶ 10)  When Watson returned with his wife to Utah, his condition worsened and he was again hospitalized.  (D.I. 1 at ¶ 11)  After being discharged from the hospital with a stomach drainage tube and external bag, Watson grew weaker and was re-hospitalized about one month later.  (Id.) It was discovered that Watson's stomach-draining tube had punctured his colon and he was diagnosed with perforated stomach lining.  (D.I. 1 at ¶ 12)  Watson's treating physician concluded that all of his medical complications were a direct and proximate result of his original shipboard illness and Oceaneering's failure to promptly and properly respond to the medical emergency.  (D.I. 1 at ¶ 13)

Watson asserts that Oceaneering owes him maintenance and cure and that Oceaneering has failed to honor its obligation to pay.  (D.I. 1 at ¶ 15, 18)  Watson asserts damages due to Oceaneering's Jones Act negligence in failing to promptly and

properly respond to Watson's life-threatening medical emergency.
(D.I. 1 at ¶ 20)  Watson also asserts the vessel PERFORMER's
unseaworthiness by not having trained medical personnel onboard
and not having crew promptly and properly respond to Watson's
emergency.  (D.I. 1 at ¶ 22)  Carolyn Watson asserts recovery for
loss of consortium.  (D.I. 1 at ¶ 26)

Oceaneering, in its motion for summary judgment, states that
the owner of the vessel PERFORMER was Ocean Systems Engineering,
Inc., which is not a named defendant in the case.  (D.I. 16 at 1)
Oceaneering asserts that Watson's claim for the unseaworthiness
of the vessel PERFORMER must be dismissed because such a claim
can only be brought against an owner of a vessel.  (D.I. 16 at 4)
In addition, Oceaneering asserts that Watson's failure to make
available an expert witness who will testify as to the standard
of care required for negligence requires dismissal of the Jones
Act negligence claim.  (D.I. 16 at ¶ 7)  Finally, Oceaneering
asserts that plaintiff Carolyn Watson's claim for loss of
consortium is not available to a spouse of an injured seaman
under the Jones Act, or under general maritime law.  (D.I. 16 at
7)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its

case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV. DISCUSSION**

It is well established that a vessel and its owner are liable to a seaman on the vessel for the seaworthiness of the vessel and for maintenance and cure for injuries sustained while on the vessel. Calhoun v. Yamaha Motor Corp., U.S.A., 40 F.3d 622, 631 (3d Cir. 1994); Matutue v. Lloyd Bermuda Lines, 931 F.2d 231, 235 (3d Cir. 1991). In addition, a seaman may sue his employer for injuries sustained in the scope of employment resulting from an employer's negligence. See Neely v. Club Med Management Servs., 63 F.3d 166, 194 (3d Cir. 1995) ("The Jones Act, however, provides a right of compensation for injuries negligently caused by the seaman's employer."). Most admirality suits involve an employee suit against the employer who is also the owner of the ship. However, when the owner of the vessel and the employer are separate entities, only the owner of the vessel is liable for unseaworthiness and maintenance and cure and only the employer is liable for Jones Act negligence. See Neely, 63 F.3d at 194 (considering a claim under the Jones Act to be against plaintiff's employers and a claim for unseaworthiness to be against the vessel owners).

**A. Unseaworthiness**

5

"The doctrine of unseaworthiness basically imposes on a shipowner a nondelegable duty to provide seamen a vessel that is reasonably fit for its purpose . . .." Calhoun, 40 F.3d at 631. Shipowners may not delegate their duty to provide a seaworthy ship. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94 n.11 (1946); see also Rodriquez v. McAllister Bros., Inc., 736 F.2d 813, 815 (1st Cir. 1984) ("Under settled principles of admiralty law, liability for unseaworthiness . . . turns upon who possessed control of the ship such that it could best be charged as the owner at the time the accident occurred."). However, in Reed v. The Yaka, 373 U.S. 410, 412-13 (1963), the Court held that a bareboat charterer, being in "full possession and control" of a vessel, may be treated as an owner, "generally called owner *pro hac vice*," and may be personally liable for the unseaworthiness of a chartered vessel. Id.; see Simko v. C & C Marine Maintenance Co., 484 F. Supp. 401, 403 (W. D. Pa. 1980) (holding employer can only be held liable for unseaworthiness if employer was found to be the owner *pro hac vice* of the vessel).

Watson only asserts that the PERFORMER was "defendant's vessel." Watson has not alleged that Oceaneering is an owner *pro hac vice* of the vessel PERFORMER. Oceaneering, in its motion for summary judgment, states the PERFORMER is not owned by Oceaneering, but rather by a third party not named in the suit. If Oceaneering is neither the owner of the vessel PERFORMER nor

6

the owner *pro hac vice*, it is not liable for the vessel's
unseaworthiness. See <u>Rao v. Hillman Barge & Constr. Co.</u>, 467
F.2d 1276, 1277 (3d cir. 1972) ("Appellee was not the owner of
the barge, and, therefore, cannot be held liable for its alleged
unseaworthiness."). Watson has come forward with no facts
showing there is a material issue of fact regarding the ownership
of the vessel PERFORMER.[1] <u>See</u> Fed. R. Civ. P. 56(e) ("When a
motion for summary judgment is made . . . an adverse party may
not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response . . . must set
forth specific facts showing that there is a genuine issue for
trial."). Therefore, Oceaneering is entitled to summary judgment
on the issue of liability for unseaworthiness.

Following the same principles, Oceaneering is not liable for
Watson's maintenance and cure.[2] <u>See Cox v. Dravo Corp.</u>, 517 F.2d
620, 624 (3d Cir. 1975) (citing <u>The Osceola</u>, 189 U.S. 158, 175
(1903)) ("The vessel and her owners are liable, in case a seaman
falls sick, or is wounded, in the service of the ship, to the
extent of his maintenance and cure, and to his wages, at least so
long as the voyage is continued. . . ."). Because Watson has

---

[1]Plaintiff did not file a response to defendant's motion for
summary judgment.

[2]Defendant does not expressly address the count for
maintenance and cure, but requests that the entire complaint be
dismissed. (D.I. 15 at ¶ 15)

alleged no facts to put the ownership of the vessel in dispute,
Oceaneering's motion for summary judgment is granted for all the
general maritime claims.

### B. Jones Act Negligence

The Jones Act provides that "[a]ny seaman who shall suffer
personal injury in the course of his employment may, at his
election, maintain an action for damages at law, with the right
of trial by jury." 46 U.S.C. App. § 688(a). Though a plaintiff
alleging claims under the Jones Act must prove the traditional
elements of negligence (duty, breach, notice, causation and
damages), the standard of proof for causation under the Jones
Acts is sometimes termed "featherweight." Evans v. United Arab
Shipping Co. S.A.G., 4 F.3d 207, 210 (3d Cir. 1993). Oceaneering
asserts that the standard of care an employer owes to its seaman
employee with respect to medical care and medical personnel is
not an issue that can be determined by an inexperienced layman,
but rather must be addressed through expert testimony.

Under the Jones Act, a seaman can maintain a cause of action
where "an employer's failure to exercise reasonable care causes a
subsequent injury even where the employer's negligence did not
render the ship unseaworthy." Ferrara v. A&V Fishing, Inc., 99
F.3d 449, 453 (1st Cir. 1996). Recently, the Third Circuit has
described the duty as "measured by what a reasonably prudent
person would anticipate or foresee resulting from particular

8

circumstances." Wilburn v. Maritrans GP Inc., 139 F.3d 350, 357
(3d Cir. 1998).

It is well settled that expert testimony in unnecessary in
cases where jurors "are as capable of comprehending the primary
facts and of drawing correct conclusions from them as are
witnesses possessed of special or peculiar training." Salem v.
United States Lines Co., 370 U.S. 31, 35 (1962). Oceaneering
argues Wills v. Amerada Hess Corp., 379 F.3d 32 (2d Cir. 2004),
mandates that an expert witness testify regarding the duty
imposed on a maritime employer, the breach of which would make
Oceaneeering liable for negligence. However, Oceaneering
misstates the holding of the case. Wills stands for the
proposition that "expert testimony on the issue of causation is
necessary in Jones Act cases where a lay juror could not be
expected to intuit the causal relationship between the acts in
question and the injury." Id. at 41; see also Wilburn, 139 F.3d
at 357 (stating the issue as whether "persons of common
understanding could comprehend the primary facts offered by
Wilburn to demonstrate the cause of his injuries"). The court in
Wills states that when an injury has "multiple potential
etiologies, expert testimony is necessary to establish
causation." Id. at 46.

The flaw in Oceaneering's argument is that Oceaneering is
requiring expert testimony to define the duty owed to Watson.

9

The duty in a Jones Act negligence claim is clear.  A seaman may
maintain an action where "an employer's failure to exercise
reasonable care causes a subsequent injury."  <u>Ferrara</u>, 99 F.3d at
453.  Futhermore, Watson is not asserting negligence based on the
lack of medical personnel or medical care of the vessel; Watson
asserts negligence by Oceaneering's "failing to promptly and
properly respond to Watson's life-threatening medical emergency."
Oceaneering's negligent act could be the delay in airlifting
Watson to a hospital.[3]  This, however, is a question for the
jury.  <u>Southard v. Independent Towing Comp.</u>, 453 F.2d 1115, 1118
(3d Cir. 1971) ("Issues of negligence in a Jones Act suit 'are
questions of the jury to determine', and the jury 'plays a
preeminent role' in Jones Act cases.") (internal citations
omitted).

### C. Loss of Consortium

Oceaneering is granted summary judgment on the claims for
loss of consortium.  The Supreme Court has stated that the Jones
Act is limited to only pecuniary loss and, therefore, loss of
society is not recoverable in a wrongful death action.  <u>Miles v.</u>

---

[3]Oceaneering argues that the one expert Watson has produced,
Dr. Manyak, "merely opines that defendant's delay in evacuating
plaintiff from the vessel caused and/or exacerbated plaintiff's
injuries." (D.I. 15 at ¶ 14)  However, in this case, Dr. Manyak
is exactly the type of expert witness Watson needs.  Dr. Manyak
can testify as to the causation element.  Dr. Manyak concludes
that the delay in removing Watson either caused or exacerbated
Watson's injuries.

10

_Apex Marine Corp._, 498 U.S. 19, 32-33 (1990).  This court follows the many other courts in extending _Miles_ to apply to personal injury cases as well.  _Lollie v. Brown Marine Service, Inc._, 995 F.2d 1565, 1565 (11th Cir. 1993) (holding the Jones Act does not authorize recovery for loss of society or consortium for personal injury); _Smith v. Trinidad Corp._, 992 F.2d 996, 996 (9th Cir. 1993) (holding wives of injured mariners cannot recover loss of society or consortium under the Jones Act); _Murray v. Anthony J. Bertucci Construction Co., Inc._, 958 F.2d 127 (5th Cir. 1992) ("[T]he Jones Act limits a seaman's recovery for injury to pecuniary losses and precludes any recovery for nonpecuniary losses, such as loss of society"); _Horsley v. Mobil Oil Corp._, 15 F.3d 200, 202 (1st Cir. 1994) (holding that _Miles_ precludes damages for loss of society under the Jones Act).  Because the court has concluded that Watson's general maritime claims should be dismissed, it will not examine whether loss of consortium is recoverable under the general maritime law.[4]

---

[4]However, the court notes that most Circuits have followed the reasoning in _Miles_ and concluded that loss of consortium is not recoverable under either Jones Act or general maritime law. The Supreme Court, in _Miles_, held that because there is no loss of society in a Jones Act wrongful death action, there can be no recovery for loss of society in a general maritime action, such as unseaworthiness, for the wrongful death of a Jones Act seaman. _Miles_, 498 U.S. at 32.  The Court reasoned that to hold otherwise would be for the Court "to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence."  _Id._ at 32-33.  Many Circuits have expanded this holding to causes of action for personal injury.  _See Lollie_, 995

11

## V. CONCLUSION

For the reasons stated herein, Oceaneerings's motion for summary judgment is granted in part and denied in part. Oceaneering is granted summary judgment on the general maritime claims of maintenance and cure and unseaworthiness of the vessel. Oceaneering is denied summary judgment on the claim of Jones Act negligence.   Oceaneering is granted summary judgment on the claim for loss of consortium.   An appropriate order shall issue.

---

F.2d at 1565 ("[W]e hold that neither the Jones Act nor general maritime law authorizes recovery for loss of society or consortium in personal injury cases."); Smith, 992 F.2d at 996 (agreeing that wives of injured mariners cannot recover for loss of society and loss of consortium in their own actions filed under the Jones Act or under general admiralty law); Murray, 958 F.2d at 131 (concluding wife of injured seaman cannot recover under general maritime law for loss of society); Horsley, 15 F.3d at 203 ("Under the analysis prescribed in Miles v. Apex Marine Corp., 498 U.S. 19 (1990), an admiralty court may not extend the remedies available in an unseaworthiness action under the general maritime law to include punitive damages or damages for loss of parental or spousal society.").

12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES R. WATSON and )
CAROLYN WATSON, )
                 )
        Plaintiffs, )
                 )
    v. )   Civ. No. 04-1298-SLR
                 )
OCEANEERING )
INTERNATIONAL )
                 )
        Defendant. )

## O R D E R

At Wilmington this 26th day of September, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1.   Defendant's motion for summary judgment (D.I. 15) is granted in part and denied in part.

2.   Defendant's motion for summary judgment on the general maritime claims for maintenance and cure and unseaworthiness is granted.

3.   Defendant's motion for summary judgment on the Jones Act negligence claim is denied.

4.   Defendant's motion for summary judgment on the loss of consortium claim is granted.

United States District Judge